0263. Is it Saws? Saws v. Loyola University of New Orleans. Mr. Marshall. Good afternoon, your honors. Charles Marshall representing Loyola University of New Orleans. The appellant in this case. May it please the court, this appeal concerns the district court's denial of Loyola's motion to strike this defamation based lawsuit under Article 971 of the Louisiana Code of Procedure. For a brief background, Loyola was sued for defamation based on an oral statement from a Loyola campus police officer and the two subsequent news articles that appeared in Loyola's online campus newspaper known as the Maroon. The oral statement and the news article reported on the criminal investigation and the arrest of a plaintiff, a former Loyola student who was accused in an official police complaint of stalking a female student and making threatening statements regarding his familiarity with bombs and chemical weapons and his professed ability to mix and release the chemicals white phosphorus and pure zinc into the Loyola dormitory vents to kill everyone in the building. The New Orleans Police Department's video interview of the plaintiff from the night of the arrest as part of the court's record, it corroborates what was alleged in a police complaint. In the video, the plaintiff admits that he has a history of making bombs. He admits he was making statements about bombs and chemical weapons to other students. He admits he was searching the internet for the lethal chemical white phosphorus for sale at cheap prices and boasting about filming a bomb explosion in a Florida restaurant and showing students video proof of his boasts. He admitted that he understood his statements would be terrifying to people. Against this factual background, Loyola filed a motion to strike under Article 971, arguing that the police officer's statement in the two news articles reporting on the criminal investigation and arrest were substantially true and not defamatory because plaintiff indeed admitted he was making terrified statements about bombs and chemical weapons. In front of this district judge, you didn't simultaneously file a motion to dismiss or a motion for summary judgment? We did not, Your Honor. Despite the abundance of evidence in the court's record showing exactly what happened factually in this case, the district court refused to rule on the merits of the case and sui sponte raised the issue of whether Article 971 applies to the federal court. Then the court denied the motion on that procedural ground. This appeal presents two issues. First, a threshold legal issue of whether Article 971 applies in Louisiana federal court. And then the second, we were asking the court to render a judgment on the merits of this case based on the factual record. The issue of whether a state's anti-slap statute here, Article 971, applies in federal court is a two-party inquiry. It requires a court first to consider whether the terms of the state statute collide or conflict with the federal rules. If a conflict exists where, for example, the state statute wouldn't wouldn't... There's a fairly developed split. There's a lot of scholarship on this. The district judge read the clock decision and we're so it's your position essentially we're bound by Henry right or wrong? Yes, I think if you read the clock opinion, I think the court was very careful in saying the rule of orderliness did not apply in the clock case because it was a Texas statute. Markedly different from the Louisiana statute as expressed in the opinion. The Texas statute... But aren't I correct that almost every case from our court that's considered the one sentence in Henry that wasn't even briefed has said it isn't resolved in our circuit? Well, I think the Lozabi and the Block cases, which are post-Henry, Your Honor, they actually, they were, they in detail discussed what I think is far and away the most important issue to look at when you're deciding whether a case is, and that is, of course, whether the burdens of proofs and the legal standards are the same. So you have Lozabi and Kurt saying, we've looked at this and it's definitive. So, um, I, you know, Henry... It's sort of very difficult for me to see how they're the same. It's just plausible is not probable? You're talking about the legal standards when you're looking at our... Just whether there's, whether there are higher hurdles for plaintiffs under the article as distinct from in a motion to dismiss or a motion for summary judgment. I understand you're saying that, Judge, but I think Lozabi and Kurt have... But I don't understand that. I guess, I mean, the split is pretty developed and the Abbas decision out of the D.C. Circuit, the Second Circuit, they're all saying the same thing that Judge Graves pointed out and that Judge Jones wrote in Clock. What's the, what, just put Henry aside, how would you say there isn't a greater hurdle facing article, this particular article? Because these article, I'm sorry, these article 971 motions are decided exactly the same as summary judgment motions. So you're focused on summary judgment? That's correct. And I think that that's, um, that's, that's how it is in Louisiana State Court and that's how the Fifth Circuit has applied it in the cases before it yet. But a plaintiff still survives if there's a material issue in dispute? No question. As distinct from they've got to make a showing that they're probably going to prevail? No, I think functionally they're equivalent and that's what this Court has said. All the plaintiff has to do is say there's a material issue of fact and the motion is denied. That that's the, they're literally functionally equivalent in the way they handle the burden of proof in the legal standard. And in that, that is set of law in this Court. And so, and I think the rule of orderliness does apply, um, uh, with respect to this case with the Lozabi-Lamar case and the Henry case. Because they've all, they've all, of course, Henry cited the notion of the Ninth Circuit case, which has since been, uh, reaffirmed in court civic in 2022. So, so I, I do think Henry, although there wasn't a lengthy discussion, it was considered by, by the citation of the case. Um, but I think Lozabi-Lamar cases have certainly definitively said there's no conflict, they're functionally equivalent. And so my, so my, my, that's one of my biggest frights in this case is for the Court to raise this issue sua sponte when no conflict has manifested itself. Why, I mean, why, there is no conflict, nobody's been treated unfairly. Well, the Clark decision is a very developed critique. At the very end it says Texas isn't the same as Louisiana. But I think the district judge here was being very responsible to look at the most recent published decision. And am I right that in Henry it was very touchingly passed on and it wasn't briefed? Well, that may be the case in Henry. There's certainly not a robust discussion in Henry, but there is in Lozabi. And, and of course Clark says, this is a settled issue. These statutes do not conflict, they're handled the same. And so in this case, what you have is you have basically an incredible amount of evidence submitted in this case. Nobody argued that there was a statutory conflict. Nobody argued that more evidence should be submitted. In fact, Loyola had to specifically agree to stop submitting evidence into the record on this motion to get permission to subpoena the entire police file. So there's no conflict here. It's a purely speculative discussion that this Court has raised to suggest that maybe in the future some case might present some yet unidentified conflict. There is no conflict. This Court is settled and it certainly hasn't manifested itself to you. So if I understand your no conflict argument, the opponent, the plaintiff in this case, can oppose your Article 971 motion by saying that we have a genuine issue of material fact that should be resolved by a jury. There's nothing about prima facie. There's nothing about who bears the burden shifting. And that would be a perfectly valid anti-SLAPP response in federal court. No question about it. And cite just Rule 56 cases. That's correct. Well, they're decided on the same Rule 56 standard, whereas if they raise a material issue of fact, you will not get a judgment of dismissal. And so you can file these motions, these 971 motions, and then litigate the entire case as if it was you had filed a Rule 56 motion. That is the purpose of Article 971, because it's designed to weed out meritless defamation cases when you have protected speech on a public issue, which, of course, is the highest wrong of First Amendment protection, public issue cases. And so, yes, it is designed for early resolution. There's no question about it. That's stated in the statute. Not my question. OK, I'm sorry, Your Honor. That's OK. That's OK. The audio in here is not great. Yeah, I understand the purpose of 971. What I'm asking is, you would file a 971 motion, and then the entire rest of the litigation would proceed under federal Rule 56 cases and precedents. You could cite Selitex and the great Troika from 1986. You could argue about who has a material dispute of fact or who doesn't without any reference to anything in the text of Article 971. That's your position about the functional equivalence? Well, that's what the Fifth Circuit has ruled, yes, in Lozano v. Block. So why not just file a Rule 56 motion? Well, it's not meant to displace what Article 971 is. It's supposed to be for early resolution. And if you look at the statute, it's decided on the pleadings and the affidavits. It contemplates extrinsic evidence, which is—we've got that in spades here. But it is an early resolution process, and it is because it addresses one of the fundamental rights that we have, which is a First Amendment right to comment on public issues. How many other provisions of the Louisiana Code of Civil Procedure are substantive? Well, that's a good question. Of course, you would have to do an eerie determination, and statutes can be procedural and substantive. So that's a statute-by-statute analysis based on the text. Are you aware of another one? Well, you know, there's a case working its way through the Supreme Court right now where I think they're looking at a medical malpractice case where it talks about how you have to file your complaint and whether you can submit an affidavit with it. And I think that case is squarely before the Supreme Court right now. The Supreme Court of Louisiana? No, the United States Supreme Court. I forget the name of it, but I think it's a very similar type issue where they have to determine, look, is this a substantive or procedural statute because it talks about how you file a suit, but you've got to attach a verifying affidavit. And I believe the lower courts ruled that it was substantive. I think this case is clearly substantive because the article—it addresses an incredibly substantive right. The whole 971 is very expressly tailored for the First Amendment, a specific type of First Amendment case. And so I think if you look at the eerie touchstones, which is the twin aims of would not—enforcing this statute promotes form shopping. Of course it would. If memory serves, our court had the Texas Mad Mal statute in front of it and held that it was not substantive several years ago. Okay, yes. Is that not the case? I mean, it's that which seemed wrong to me because— Right, I believe there's a case in the Supreme Court right now. I don't have the name on my finger. It's not out of our circumstances. Berg v. Troy, maybe? Could be. That's just thanks to a law clerk, but that's a Shady Grove case. They heard in October. It possibly could be that, Your Honor.  Certainly— When you say Block doubled down on Henry, correct? Yes. I thought in Block, and I'm just reading the quote, we do not conclusively resolve today whether Article 971 applies in diversity cases. Yes, I'm fully aware. And I think to me that supports my position because what it says is we're resolving probably literally the most important aspect of deciding whether a statute is conflict, and that's the burden of proof in the legal standards. I think what they're saying is perhaps another case would arise where you might be presented with another conflict. We're not saying in the history—we're not speculating whether a conflict might not arise, but they are definitively deciding what all of these courts around the country are looking at, and that is the burden of proof. Just like the clock panel. And discovery. Talk about discovery. Discovery, I think, presents no conflict. Certainly not in this case, but just from an academic standpoint, Article 971 allows the court to order whatever discovery it wants. You can ask for discovery, and the court can allow whatever discovery it needs to decide the motion. Rule 56 is similar. There is a process where you can petition the court to get additional discovery if you might need it for resolution. So I don't think there's any conflict in the discovery provision. Certainly not in this case. Your Honor, did that answer your question about discovery? Yes. And so then, again, there's other aspects of this statute that, of course, the attorney's fee provision—I don't see how that presents a conflict. There are, of course, state statutes that have attorney's fee provisions that apply in federal courts, such as the Louisiana Bank Faith Insurance Statute. That doesn't produce any additional hurdles to oppose or support a dispositive motion. So, again, I think the issue of whether there was a conflict has been resolved. I think the rule of orderliness applies. I think the judge should not have relied on Clark to say Clark overruled those cases when the Clark panel didn't say that. And, in fact, the Clark panel strongly indicated the rule of orderliness would apply in Louisiana. So unless the panel has any more questions about applicability, I've got a merits argument to make. I'll move on if that's okay.  Under Louisiana defamation law, police officers and journalists have a qualified privilege to report on public issues such as criminal investigations and arrests. The privilege is only to be used when the speaker acts with malice. Malice is a very high burden of proof. It requires the speaker to intentionally make a false statement or to act with reckless disregard for the truth. In Trenacosta v. Beckley, the Louisiana Supreme Court held that a police officer's comments on a criminal investigation or defamatory only if the comments are a fabricated story and the officer has no reasonable basis for believing the comments are true. There was no evidence of that type of fabrication anywhere in this record. Plaintiff's principle complaint is that the police officer's oral statement in the news articles reported that he was in possession of dangerous chemicals. When it was determined later that the plaintiff was not actually in possession of the chemicals, he was accused of telling people he had the ability to mix and release chemicals in his dorm room. Counselor? Yes? Your time has expired. Okay. I'll save my merits argument for my rebuttal if I have an extra five minutes. You saved time for rebuttal. I saved time for rebuttal. Okay. I'll address that in a moment. It's that. Thank you. Good afternoon, your honors. You may have placed the court. My name is Andrew Stevens. I'm here today on behalf of the appellee, Lou Saas. Your honors, we ask the court to uphold the lower court's ruling that Article 971 of the Louisiana Code of Civil Procedure does not apply in federal diversity cases. Your honors, the appellant has made several arguments both here today and in its brief that the rule of orderliness prevents this court from determining that Louisiana or upholding the lower court's ruling that Louisiana 971 does not apply here. We disagree with that assessment and do argue that the rule of orderliness applies. However, the rule of orderliness should apply to the court's decision in Clock as opposed to the court's decision in Henry. Even though Clock described Henry's ruling as a holding. Correct. But, your honors, if you look at the court's ruling in Henry, which is also noted in Clock, the court in Henry did not actually determine or do an analysis of whether there was a direct conflict between Article 971 and Federals 12 and 56. The court in Henry simply stated that Louisiana law applies and stated without explanation that they viewed Article 971 to be substantive. They called it non-complete procedural. I guess the difficulty is that Cuba Majority and Clock both say that Henry is a holding. And then in Clock, therefore, the panel is studious and responsible to say, we're going to distinguish if Texas law imposes more hurdles. That sounds like those two courts critiqued it but knew that they couldn't overrule it. Correct, your honor. They did critique it in analyzing the Texas anti-slap statute, the TCPA. I argue that the courts in both of those cases were being careful because the issue of whether 971 applies in federal diversity cases was not actually before the court in those decisions. It was simply limiting the scope of the argument so as not to directly overrule Henry. However, they were waiting for a case to expand upon the test that it applied in Clock as to Article 971. And your honors, I would disagree that there is any previous case that has acknowledged that the Henry court applied that standard test to Article 971. In fact, the court in Clock indicates that that argument was waived because it was not timely raised and the parties did not have an opportunity. So though it's published, though it's a holding, it's not solid enough? Or what's your primary argument? Shady Grove has changed the terrain or you're just anxious to try to get to the full court? Well, as you stated earlier, it's always the answer. But I would argue that Shady Grove is an intervening case which further expands upon and clarifies the longstanding test for deciding whether a substantive state law can apply. I would argue— Has any circuit—I mean, the Ninth, of course, didn't do it. But has any circuit yet changed its approach to these state statutes because of Shady Grove? Not to my knowledge, your honor. The district court—I'm sorry, the circuit court, DC and Hattis, did apply Shady Grove. And this court in Clock did rely on the analysis in Shady Grove when determining that the TCPA does not apply. Shady goes in a different context. And the court said we're applying a familiar test and cites cases that predate Henry to describe the familiar test. Correct, your honor. Well, Justice Scalia in Shady Grove, I would argue, clarifies the test that needs to be applied in this exact situation. And that test, again, if a rule is deemed to be substantive, which we have not conceded that it is, it must—the question or the test is, does the state rule answer the same question as rules, federal rules, or a federal rule, in this case the federal rules of civil procedure? And going back to the rule of orderliness, I would argue that the court in Clock has already determined that anti-SLAP statutes in general do answer the same question as federal rules 12 and 56. That question being, what is the procedure which a litigant can avoid having to go to trial in a civil case? That is this court's ruling in Clock. And when applied more globally to anti-SLAP cases in general, that same question is answered in Article 971. If we are to follow the rule of orderliness, this court should follow that reasoning in Clock. Because that reasoning in Clock was not applicable in Henry, was not argued in Henry, was not decided. This court in Clock put out the test for evaluating whether or not the state's substantive rule applies. Your Honor, going back briefly, we would argue, however, that Article 971 is purely procedural. And again, would argue that this court has acknowledged that in Clock. In Clock, this court was discussing the McKeith case out of the First Circuit. And held that there is no substantive law or right that is furthered by an anti-SLAP statute. An anti-SLAP statute strictly provides a mechanism, a procedural mechanism, by which a litigant can avoid going to trial or to dismiss a case at a certain stage in litigation. So, our argument is, under a theory analysis, the Clock court was already very clear that an anti-SLAP statute is procedural. And therefore, there should be no substantive discussion as to the Shady Grove test. As Judge Graves held in the Cuba case, that discussion should happen. As with Judge Graves, we will continue on to discuss the substantive nature of this and apply the test. However, we would still argue that that is a procedural law and a procedural statute under the Louisiana Code of Civil Procedure. So, Your Honor, in applying the Shady Grove test, the courts must look to determine whether or not the statute or the rule in question conflicts with federal rules. And if it does, and if it determines that it does, whether or not that federal rule violates the rules enabling that. In terms of the second part of the analysis, Justice Scalia and several other courts have held that the federal rules of civil procedure clearly do not violate the rules enabling that. So, we would argue that that part of the test is easily disposed of. Under the first part of the test, though, the question that is asked by Justice Scalia and Shady Grove is, does the anti-SLAP statute answer the same question as the federal rules of civil procedure? And again, we would argue that this Court has already ruled that it does. It answers the question of when a litigant can end a lawsuit and avoid going to trial. Under this Court's ruling, and if we look at this Court's ruling in Clock, which, again, this Court acknowledged that the TCPA, which it was analyzing in Clock, is different than Article 971. However, when looking at the issues in which the Court in Clock reached its decision, it's clear that there are similar portions of the TCPA in Article 971, which demonstrate that conflict. Simply, and most importantly, which no Louisiana District Court case has decided under Article 971, is the burden-shifting aspect of an anti-SLAP law. Again, this is at the heart of every single anti-SLAP law in every single state. The idea that a defendant or a moving part solely has to make a showing that their speech that makes up the basis of the complaint constitutes protected activity or protected speech. That is a defendant's sole burden under Article 971, the TCPA, and every other anti-SLAP statute that's been passed across the country. That burden-shifting procedure is not found in any other federal rule of civil procedure which pertains to the dismissal of an action before trial. Specifically, in Rule 12, a defendant or a moving party is required to show that plaintiff has not stated a claim upon which relief can be granted. That review is limited strictly to the four corners of the complaint. Under Rule 56, a defendant, a moving party, not a non-moving party, has the burden of showing that there are no genuine issues of material fact present in the case such as warrant moving forward. Only after, in both Rule 12 and Rule 56, that a moving party makes that showing does the burden shift. Here, under Article 971, that is not the case. A defendant simply has to state, the speech that is complained about in this complaint falls under protected free speech or is of an issue of public concern. Therefore, the plaintiff now not only has the burden, but has a burden which is higher than that of Civil Rule 12 and which we would still argue is higher than that of Civil Rule 56 in showing the probability of success on the merits, not a genuine issue of material fact or not a plausible claim upon which relief can be granted. There is no doubt that that burden shifting procedure is in direct conflict with both Civil Rule 12 and Civil Rule 56. And while the defendant or the appellant might argue that that falls in between the two rules, this court again and CLOC and other circuit courts have held that the federal rules are comprehensive. The federal rules of civil procedure are comprehensive. They do not supply a baseline upon which state court rules can fit between. The federal court system has the right to create its own rules of procedure and has done so in a comprehensive manner. So there is no room for a regulation or a law such as Article 971, which conflicts so directly with Civil Rule 56 and Civil Rule 12. Counsel, what of your friend's argument that, yes, the text of these are very, very different, but in practice, they're interpreted to be exactly the same. So an Article 971 motion and a Rule 56 motion are exactly the same. And you could have just come in and said, well, we're just going to litigate this as if it was a cellotex question. And here's our material disputes of fact. And let's go to trial, Judge. Yes, Your Honor. I do think that there's two different burden analyses that need to be done in regard to Article 971. While there is the Lozoby case does acknowledge that Article 971's burden of proof is similar to that of Civil Rule 56, it does not in any way analyze whether or not the burden shifting procedure is in direct conflict with Civil Rule 56. Both the Lozoby court and the court twice in the Block cases has acknowledged that the litigants in those cases did not raise that issue. They did not have an opportunity to argue that case or argue that issue and did not—the court declined to rule on whether or not that burden shifting provision would violate Civil Rule 56. Again, we would argue that the probability of success is different than presenting a genuine issue of material fact. I think especially as—turning quickly to the merits here, Appellant did argue that in order for us to succeed on our defamation claim, we would have to prove actual amounts. Louisiana Supreme Court has held that actual amounts can only be proven through clear and convincing evidence. The clear and convincing evidence standard is very similar to what the court's ruling was in Clock related to the burden of proof that a plaintiff would face when facing a 971 motion. And since 971 only applies to claims involving free speech and defamation claims, it can be argued that actual amounts would need to be proven in almost every single case that would subject—be subject to a 971 challenge. So while their—the standard is different, the practical effect is the same. They are asking the plaintiff to prove by clear and convincing evidence actual amounts. In addition, Louisiana Supreme Court has also held that issues related to mental state are not favored to be decided through summary judgment. Mental state is the only determination for actual amounts. There has to be clear and convincing evidence that the plaintiff can produce about actual amounts. And this case lays bare the problems with that analysis of findings. The appellants here submitted three affidavits from the three primary publishers of the statements in which we complained, where all three of those publishers simply stated, I believe that was happening in good faith. The plaintiff in this case, should the court find that Article 971 applies, is unable to provide any countervailing evidence to—of clear and convincing nature to rebut that. Because they've not had the opportunity to conduct discovery, and they have not had the opportunity to cross-examine the witnesses. The appellant will also note to Judge Richmond's question about discovery earlier, that there is actually a difference in the standard for discovery. The appellant is correct in indicating that it is possible for the plaintiff to move forward limited discovery in certain circumstances under Article 971. However, Article 971 provides that good cause must be shown as to why that discovery is needed. Rule 56D does not impose a similar good cause standard that Article 971 imposes here. So we would argue that the discovery provision also is in direct conflict with Civil Rule 56. He says that that's not a practical conflict because there's no discovery that either side has sort of contemplated, that wasn't—that we need more stuff before we could either make a legal determination or go to trial. Do you agree with that assertion? There was—there was no request—I apologize. There was no request by the plaintiff here for discovery. However, that does not preclude the court from finding that that provision is still in conflict with Civil Rule 56 in line with this court's decision to plot. It becomes clear that the rule of orderliness will be followed if this court upholds the decision in clock and follows the decision in clock, finding that this is a substantive—even if this is a substantive rule of Article 971, it does directly conflict with Civil Rule 12 and Civil Rule 56. Your Honors, the appellant also briefly raised the argument regarding forum shopping. And it is acknowledged that whether or not a decision or the application of the state law rule would induce forum shopping is a determination that goes into this discussion. However, this is a federal diversity case. There are strict rules about whether or not cases can qualify for federal jurisdiction through diversity. This is—the decision or the upholding of the lower court's ruling does not create forum shopping, similar to this court's ruling in clock does not create forum shopping. There are strict rules in place already for those cases which would qualify as federal diversity cases. Therefore, that consideration should—does not amount to—or the court upholding the lower court's ruling does not amount to creating a more favorable court. Well, you say that, but I mean I do see instances where you would get a lot more discovery in state court—excuse me, in federal court than you would get in state court. That is true, Your Honor. And that can be outcome determinative. It could be outcome determinative potentially, but this—the upholding of the lower court's ruling does not create an open doors to the federal courthouse for all nations. If Mr. Saaz was a citizen of Louisiana, he would not have the ability to file this case as a federal diversity case because there would be no diversity in jurisdiction. If Mr. Saaz was unable to adequately plead at least that his damages exceeded $75,000, he would not be able to bring this case through the federal courts under diversity jurisdiction. So, there's only a limited set of cases which would even comply to this decision and which would even be indicative of foreign shock. While there could be differences between the outcome of the case, as Justice Scalia said, that determination alone is not enough to determine that the federal rules should not apply and that the state court rules should apply under the Shady Grove analysis. Your Honor, very briefly on the merits of this case, I believe it is indicative. Plaintiffs would argue—apologize—appellees would argue that there was no decision from the district court on the merits of the case or doing an analysis of Article 971 to plaintiffs—to appellees' claims. Appellee would argue that if this court does hold that Article 971 applies in federal diversity cases, that this court should, at minimum, remand this case to the district court for a decision on the merits of those 971 arguments raised by the appellant in their initial filing. Appellee would urge this court to uphold the ruling of the lower court. Thank you very much. Yes. Your Honors, my friend for the plaintiff, I would argue he basically conceded that Shady Grove is not an intervening decision. It applies a familiar framework as it states in the opinion. It doesn't change any of the analysis and Henry and certainly Lozavio Block decided after Shady Grove. It's a familiar framework and it's the exact same test that was applied in the Newsham case cited by Henry and then by Coors Civic reaffirming Newsham and in Lozavio. I think the burden—Lozavio Block have held that these statutes are functionally equivalent in the way they work, which includes the burden-shifting aspect. And I think that the burden-shifting argument made by plaintiff today also, it ignores the practical realities that these motions perceive the same. But also in this specific case, because we're dealing with conditional privileges in defamation law, under Louisiana defamation law, once a conditional privilege applies, that burden does shift to the plaintiff to prove an abuse of privilege. So that's his burden on this motion or on Rule 56 motion. Once the privilege applies, he's got to prove an abuse. It clearly applies here because we have police officers and journalists commenting on a criminal investigation and an arrest, which is well-established or public issues. So on the merits, I understand we're asking the panel to do something that may seem a bit extraordinary, which is render a decision on the merits. Here's why we think that's appropriate. There are no issues of material fact here. We have an incredibly abundant factual record showing exactly what happened here. We have a very detailed police complaint that is basically corroborated by the video interview of the plaintiff from the night of the arrest. The court can see for itself exactly what happened here, exactly what the complaint was, exactly what the plaintiff admitted to. And they can look at the publications in the context there. And what the court can see is that there's nothing fabricated here. There's no bad faith. The plaintiff has put these publications under a microscope to find mistakes. But that's not the standard here. A mistake is not actionable unless the speaker knew the truth, falsely reported it in an effort to harm the plaintiff. There are no such mistakes of that nature in this case. Rendering judgment and not remanding would, of course, promote the purpose of this statute, which is to weed out meritless claims and spare defendants who have been sued over protected speech litigation costs. It's very troubling that the district court, when it denied the motion to stay pending appeal, which this court then granted, and this is part of the record before the court, the district court put in its order that this is a private matter. That's extremely troubling because what that says is that if this court rules that Article 971 does apply and it goes back to the lower court, the lower court is indicating they won't apply it anyway because the lower court doesn't think this is a public issue. Despite all of the law saying that crime and reporting on crime is a public issue, it also indicates that the district court is prepared to apply the wrong legal standard in this case, not the standard of malice, which clearly applies to this conditional privilege case. And finally, the district court, in its order denying the stay, indicated that it didn't think that the clearly derivative causes of action would be subject to the 971 motion, which is another matter of settled law. And so respectfully, Your Honors, I think if this case goes back, it defeats the purpose of the statute, and I do believe the district court is poised to commit reversible error based on those comments that this is a private matter. This is clearly a public matter. Malice is clearly the standard, and I don't believe I've gotten a strong opposition on those points from plaintiffs. So I think in closing, we would respectfully ask the court to apply the correct legal standard of malice to this case, follow the rule of orderliness, apply 971. And again, I don't think this is the right case to go on a search for a yet unrevealed statutory conflict that has not been manifested here. And unless the court has any questions, I'll close with that. Thank you, Counsel. Thank you, Your Honor. That will conclude our arguments for the day. The court is adjourned until 9 o'clock in the morning.